IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01761-GPG-CYC

ELIAS LARRY,

    Plaintiff,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

    Defendant.

---

**ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Plaintiff Elias Larry, a college athlete, moves for a preliminary injunction (the "Motion") to enjoin defendant National Collegiate Athletic Association's (the "NCAA") so-called "Five-Year Rule" and any other bylaw preventing him from playing football in the 2025-2026 season. ECF No. 10 at 1. But a plaintiff seeking an injunction must demonstrate a likelihood of success on the merits, and the plaintiff fails to do so here. Accordingly, the Court recommends that the Motion be denied. The Court further recommends that the plaintiff's second motion for preliminary injunction, ECF No. 33, which raises no additional arguments, be denied as moot.

## BACKGROUND

    Before recounting the factual background of this case, there is a threshold issue. The defendant requests leave to file a surreply or to strike new material in the plaintiff's Motion reply. ECF No. 26. Courts generally permit a surreply only when a party includes new material for the first time in a reply brief. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Here, the defendant identified such new material, ECF No. 26 ¶ 4, and the plaintiff does not

oppose the surreply's filing, *id.* at 1 n.1. The Court therefore grants the defendant leave to file a surreply.

According to the plaintiff's complaint, Motion, and related briefing, *United Food & Com. Workers, Local 7 v. Dillon Cos.*, 23-CV-00958-GPG, 2023 WL 3231071, at *1 n.1 (D. Colo. May 3, 2023), the plaintiff began his collegiate education at the United States Naval Academy and played football there during the 2021-22, 2022-23, and 2023-24 seasons. ECF No. 1 at 4. During the last of these seasons, the plaintiff experienced emotional and psychological distress that resulted in depression. *Id.*

On December 3, 2023, the plaintiff requested an emergency appointment with the Midshipmen Development Center for psychological counseling. ECF No. 22 at 13. The following day, a psychologist evaluated the plaintiff, during which he complained that he felt discriminated against and disrespected in the sport, that he went from starting each game to not playing at all, and that his expressions of concern regarding that slight resulted in his coach telling him that the staff believed the plaintiff had a bad attitude. *Id.* Approximately a week later, the plaintiff saw the same psychologist, this time complaining of a "sudden increase in distress" caused by an impending football game. ECF No. 10 at 24. Believing that he was still being treated unfairly by coaching staff, the plaintiff indicated that he planned to enter the transfer portal. *Id.* The psychologist noted that the plaintiff "appeared to be doing well emotionally, and denied any mental health symptoms," but showed "a moderate elevation in the sub-scales of Depression, and Academic Distress." *Id.*

After entering the NCAA transfer portal, the plaintiff transferred to Colorado State University ("CSU"). *Id.* He played during the 2024-25 season, his fourth playing football. The NCAA, however, imposes a Five-Year Rule, which limits student-athletes to four seasons within

2

five calendar years. NCAA Division I Bylaw § 12.8.1; ECF No. 19-2 at 67. Faced with the plaintiff's potential ineligibility under that rule, CSU applied for a season-of-competition waiver on February 10, 2025, citing the plaintiff's mental health challenges and coaching change during the 2023-2024 season. ECF No. 19-1 at 8. The invoked rule allows for a student-athlete to be granted a waiver from the Five-Year Rule when, as relevant here, the student-athlete can demonstrate an extenuating circumstance. NCAA Division I Bylaw § 12.8.5; ECF No. 19-2 at 76. An extenuating circumstance includes the student-athlete's immediate family member suffering from a life-threatening condition or an acute, extreme financial difficulty. NCAA Division I Bylaw § 12.8.6.2; ECF No. 19-2 at 77.

Less than one month after CSU submitted its waiver application, the defendant denied it, noting that because the plaintiff played 58% of the games in the 2023-2024 season and that one such game occurred in the second half of the season, the season had to be counted toward the Five-Year Rule. ECF No. 19-3 at 5. CSU appealed some two weeks later. ECF No. 19-1 ¶ 28. On June 5, 2025, the defendant denied the appeal. ECF No. 19-4 at 2.

That same day, the plaintiff commenced this action. ECF No. 1 at 1. He alleges that the NCAA's Five-Year Rule violates Section 1 of the Sherman Antitrust Act and Colorado state law. ECF No. 1 at 4, 13.

This Motion followed. ECF No. 10 at 1.

## ANALYSIS

Fed. R. Civ. P. 65(a) permits a court to issue a preliminary injunction "on notice to the adverse party." To obtain a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

3

the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A party seeking a preliminary injunction must prove that *all four* of the equitable factors weigh in [his] favor . . . ." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). And when, as here, the movant seeks a preliminary injunction that "changes the status quo," he "faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors" and "must make a 'strong showing' that these tilt in [his] favor." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (quoting *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016)). "[N]either Fed. R. Civ. P. 65(a) nor" the Tenth "[C]ircuit's precedent require the district court to hold an evidentiary hearing or oral argument before deciding a motion for a preliminary injunction," *Northglenn Gunther Toody's, LLC v. HQ8-10410-10450 Melody Lane LLC*, 702 F. App'x 702, 705 (10th Cir. 2017), and, as such, the Court does so without a hearing or oral argument.

On the papers, the likelihood of success on the merits proves dispositive. The Motion is based on the defendant's alleged violation of the Sherman Act, ECF No. 10 at 1, under which "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The Supreme Court has "long recognized that in view of the common law and the law in this country when the Sherman Act was passed, the phrase 'restraint of trade' is best read to mean 'undue restraint.'" *NCAA v. Alston*, 594 U.S. 69, 81 (2021) (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018)). "A plaintiff who alleges a violation of section 1 must establish: (1) concerted action in the form of a contract, combination, or conspiracy, and (2) an unreasonable restraint of trade." *Systemcare, Inc. v. Wang Lab'ys Corp.*, 117 F.3d 1137, 1139

4

(10th Cir. 1997). That is because section 1 "outlaw[s] only unreasonable restraints." *Am. Express*, 585 U.S. at 540 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)).

As a threshold issue, the defendant contends that the Five-Year Rule is exempt from antitrust scrutiny because it is not a "restraint of trade or commerce," 15 U.S.C. § 1, but instead a noncommercial player-eligibility rule. ECF No. 19 at 9. That "argument has met mixed success in the appellate courts." *Fourqurean v. NCAA*, --- F.4th ----, 2025 WL 1944005, at *1 (7th Cir. Jul. 16, 2025). The same is true in the district courts. *Compare Braham v. NCAA*, No. 3:25-cv-00253-MMD-CSD, 2025 WL 2017162, at *5 (D. Nev. Jul. 18, 2025) (finding "that the Five-Year Rule as applied to JUCO players is commercial in nature because it is tied to potential NIL [name, image, and likeness] agreements") *with Hasz v. NCAA*, No. 8:25CV398, 2025 WL 2083853, at *4 (D. Neb. Jul. 24, 2025) ("The Court agrees with those courts finding the Five-Year Rule is a true eligibility rule, not a commercial rule."). But the Court need not resolve this dispute. Even assuming that antitrust scrutiny applies, the plaintiff still cannot demonstrate that such scrutiny results in a likelihood of success on the merits.

"There are 'two main analytical approaches for determining whether a defendant's conduct unreasonably restrains trade: the per se rule and the rule of reason.'" *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1306 (10th Cir. 2017) (quoting *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1203 (10th Cir. 2006)). "Determining whether a restraint is undue for purposes of the Sherman Act 'presumptively' calls for . . . 'rule of reason analysis.'" *Alston*, 594 U.S. at 81 (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006)). That is the framework the parties employ here. ECF No. 19 at 10; ECF No. 22 at 7. It entails "a three-step, burden-shifting framework" inquiring into "'market power and market structure . . . to assess the [restraint]'s actual effect' on competition." *Am. Express*, 585 U.S. at 541 (quoting

5

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984)). The plaintiff "has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Id.* "If the plaintiff carries [his] burden, then the burden shifts to the defendant to show a procompetitive rationale for the restraint." *Id.* "If the defendant makes this showing, then the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." *Id.* at 542.

The plaintiff fails to meet his burden as to the first step. To begin, he fails to identify the relevant market and, "[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Id.* at 543 (quoting *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965)). Instead, he relies on language in *Alston* noting that "NCAA's Division I essentially *is* the relevant market for elite college football and basketball." 594 U.S. at 81 (quoting *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1070 (N.D. Cal. 2019)); *see* ECF No. 22 at 7. He notes further that some district courts have also construed *Alston* as shorthand for the relevant market. ECF No. 28; *see, e.g.*, *Braham v. NCAA*, 3:25-CV-00253-MMD-CSD, 2025 WL 2017162, at *6 (D. Nev. July 18, 2025). But "[t]he *Alston* Court did not decide the question of market definition." *Fourqurean*, 2025 WL 1944005, at *7. Indeed, the quote the plaintiff references merely recited the case's procedural history. *See Alston*, 594 U.S. at 81. Thus, "[a]fter . . . *Alston*, it is generally accepted that the NCAA engages in some commercial activity, but challenging specific NCAA rules" still "requires a factual determination of market activity for purposes of a potential violation of Section 1 of the Sherman Antitrust Act." *Arbolida v. NCAA*, 25-2079-JWB, 2025 WL 579830, at *3 (D. Kan. Feb. 21, 2025) (collecting cases). The plaintiff has provided no evidence for that determination and, accordingly, the Court cannot "make the necessary factual determinations or

6

examination of the relevant market circumstances, market power, and market share." *Brzovic v. NCAA*, 2:25-CV-02885-DCN, 2025 WL 1370758, at *4 (D.S.C. May 11, 2025) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002)). To be sure, the plaintiff proceeds pro se, and his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant," *id.*, and the Court cannot supply facts surrounding the relevant market for him. It follows, then, that the plaintiff is unable to prove a likelihood of success on the merits of his Sherman Act claim.

There is an additional, even "more fundamental problem" with the plaintiff's motion. *Fourqurean*, 2025 WL 1944005, at *8. He fails to establish "anticompetitive effect that harms consumers in the relevant market." *Am. Express*, 585 U.S. at 541. To do so, the plaintiff "would need to show that the Five-Year Rule creates, protects, or enhances the NCAA's dominant position in the market—and thus the NCAA's ability to depress student-athlete compensation below the competitive level—by making it more difficult for the NCAA's existing or potential rivals to compete against the NCAA." *Fourqurean*, 2025 WL 1944005, at *8. Instead, he "relies solely on his own exclusion from participating in college football as proof of anticompetitive effects." *Id.* But "[h]e is not a rival of the NCAA, . . . he has not drawn a link from his exclusion to an adverse effect on an existing or potential rival of the NCAA," *id.*, and "antitrust laws were enacted for 'the protection of competition, not competitors.'" *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). Demonstrating his own exclusion is not enough for an antitrust violation; harmful anticompetitive effect is what he must show.

The short of it is that the plaintiff neither established the relevant market nor anticompetitive effects that harm consumers under the rule-of-reason analysis. As such, the plaintiff has failed to make a clear showing that he is likely to succeed on the merits and therefore fails to carry his burden on the Motion.

There is a coda to add. The plaintiff's reply, for the first time, discusses at length reasons that he believes that he merits an exception to the Five-Year Rule, even if he does not meet any literal written exception in the NCAA Bylaws. *See* ECF No. 22 at 3–7. As a legal matter, there are a number of reasons why this argument fails. For one thing, "arguments raised for the first time in a reply brief are generally deemed waived." *Lake Irwin Coal. v. Smith*, No. 19-CV-01056-CMA-GPG, 2021 WL 4459048, at *2 (D. Colo. Sept. 29, 2021) (quoting *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011)). For another, the discussion is unanchored to any legal theory and is more of an appeal to the spirit of the NCAA's rules and purpose which, while sympathetic, cannot anchor a motion for preliminary injunction. *See, e.g.*, *Johnson v. NCAA*, No. CV 25-60-M-KLD, 2025 WL 1790345, at *18 (D. Mont. Jun. 26, 2025) (denying preliminary injunction based on "claim for 'arbitrary enforcement'" of NCAA Bylaw where "the legal basis for such a claim under Montana law is unclear" and the plaintiff did "not cite any legal authority in his opening brief"). The Court therefore cannot issue a preliminary injunction based on these arguments. Of course, nothing stops the defendant from reconsidering its decision with whatever new evidence the plaintiff marshaled for this case. *See Fourqurean*, 2025 WL 1944005, at *8; *Arbolida*, 2025 WL 579830, at *2. But that is beyond the scope of the plaintiff's motion and, thus, the Court's analysis must end here.

As the plaintiff raises no new arguments in his second motion for preliminary injunction, that motion is moot.

## CONCLUSION

For the foregoing reasons, the Court

1. **RECOMMENDS**[1] that the Motion for Preliminary Injunction, ECF No. 10, be **DENIED**;

2. **RECOMMENDS** that the plaintiff's Second Motion for Preliminary Injunction, ECF No. 33, be **DENIED** as moot; and

3. **ORDERS** that the defendant's Motion to Strike, or Alternatively, for Leave to File a Surreply, ECF No. 26, be **GRANTED**.

Dated this 6th day of August, 2025, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.